UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
ISAAC HOWARD, : CASE NO. 1:12-CV-2628
:
        Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 1]
TERRY TIBBALS, *et al.*, :
:
        Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* plaintiff Isaac Howard brings this action against Mansfield Correctional Institution ("MANCI") Warden Terry Tibbals, MANCI Unit Manager Kenneth Black, MANCI Case Manager David Arnold, MANCI Operations Manager Marva Allen, and Ohio Department of Rehabilitation & Correction ("ODRC") Director Gary C. Mohr. In the Complaint, plaintiff challenges his inmate security classification and the implementation of MANCI's three-tier unit management system. He appears to seek monetary relief. (Doc. No. 1-1).

**I. Background**

Plaintiff is a state prisoner, incarcerated at MANCI in Mansfield, Ohio. The Complaint is not entirely clear, but it appears plaintiff is challenging defendants' implementation of a "three-tier unit management process" at MANCI. (Doc. No. 1 at 4). Plaintiff does not explain the nature or purpose of this management process, but it appears from his allegations that MANCI's "three-tier

unit management process" is a system whereby inmates are assigned a security classification based on a privilege review and then assigned to corresponding housing units based on that classification.[1] Plaintiff asserts defendants conducted an incomplete privilege review in his case and improperly assigned him a security classification of "3B." Specifically, he claims defendant Arnold submitted "a privilege level review paper that was incomplete, [and] had nothing on my current behavior but had closed tickets which I already served sanctions for." (Doc. No. 1 at 5). Plaintiff asserts defendant Arnold improperly refused to consider positive information about his conduct, job performance, and education. (Doc. No. 1 at 5). Further, he strongly objects to defendant Arnold's alleged consideration of plaintiff's "closed tickets" for past conduct in determining his security classification, asserting this amounts to double jeopardy.

Plaintiff claims defendant Black violated his constitutional rights by accepting defendant Arnold's classification of plaintiff as a "3B" inmate without conducting further interviews or investigation. (Doc. No. 1 at 4). He asserts defendant Black violated principles of double jeopardy when he considered plaintiff's "closed tickets" in assigning his "3B" classification. Plaintiff further claims defendant Black "separated inmates by creating another system which is discrimination."

---

[1] According to ODRC's website, the three-tier prison management system "creates multiple levels of managing offenders which coincide with the security classification system. Comprised of control prisons, general population prisons and reintegration centers, the 3 tier model constructs a graduated level of privileges designed to reward positive behavior." *See* ODRC's The Communicator, June 2012 issue at p. 3, available at www.drc.ohio.gov. Under this system, inmates with the highest security classification (levels 4A, 4B, 5A, and 5B) are assigned to "control prisons," which are "not designed as disciplinary centers, although inmate autonomy is greatly reduced." *Id.* Those inmates with security classifications 2A, 2B, 3A, and 3B are assigned to "general population" prisons. *Id.* Only those inmates with a security classification of 1 are assigned to a "reintegration center." *Id.* According to ODRC, "the new 3-tier managed system . . . is designed to address violence throughout the system while simultaneously creating an environment that encourages and supports pro-social values and behaviors." *Id.*

(Doc. No. 1 at 4).

Plaintiff asserts he filed an informal grievance regarding the three tier unit management process and his classification as a "3B" inmate. He claims defendants Tibbals and Allen informed him the decision to implement the three-tier unit management process was made by the operations support center and was, therefore, not grievable. (Doc. No. 1 at 4). He asserts defendant Tibbals "allow[ed] his unit managers to re-open close[d] tickets cause there were too many 3A's and not enough 3B's, so inmates such as myself were now class[ified] as 3B's even though [our] points stated we were 3A's." (Doc. No. 1 at 4). Plaintiff further claims that, by virtue of being classified as a "3B" inmate, he was taken out of unspecified jobs and programs and kept in his cell "for up to 20 hours taking away the chance for rehabilitation." (Doc. No. 1 at 4). Plaintiff asserts this constitutes discrimination.

With respect to defendant Allen, plaintiff claims she failed inmates "by not trying to [hear] the problems concerning the 3a and 3b system, which house inmates together in cells for 20 hours many of who are class as gang members." (Doc. No. 1 at 5). Finally, Plaintiff claims defendant Mohr is responsible for the shortcomings of the three tier unit management process by virtue of his position as ODRC Director. (Doc. No. 1 at 5).

Plaintiff filed the instant Complaint on October 22, 2012, alleging due process violations, double jeopardy, and discrimination. (Doc. No. 1). He does not indicate the relief he is seeking.

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which

relief can be granted, or if it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III. Analysis

---

[2] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

The Court construes plaintiff's allegations as alleging claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the Double Jeopardy Clause of the Fifth Amendment. Because the Constitution does not directly provide for damages, plaintiff must proceed under one of the civil rights statutes which authorizes an award of damages for alleged constitutional violations. As no other statutory provision appears to present even an arguably viable vehicle for the assertion of plaintiff's constitutional claims, the Court construes them as arising under 42 U.S.C. § 1983.

To set forth a cognizable § 1983 claim, plaintiff must establish that (1) he was deprived of a right secured by the Constitution or the laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). If plaintiff fails to make a showing on any essential element of a § 1983 claim, that claim must fail. *Simescu*, 942 F.3d at 375.

The Court will consider each of plaintiff's claims within this legal context.

### A. Proper Parties & Claims

The Complaint does not indicate whether plaintiff is suing defendants Tibbals, Black, Arnold, Allen and Mohr in their official capacities, individual capacities, or both. Given plaintiff's *pro se* status, the Court will liberally construe the Complaint as alleging both official and individual capacity claims against these defendants.

#### 1. Official Capacity Claims

To the extent plaintiff states causes of action against defendants Tibbals, Black, Arnold, Allen and Mohr in their official capacities, these claims are dismissed. The Supreme Court has held

that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). As defendants Tibbals, Black, Arnold, Allen and Mohr are employed by ODRC, and thus are state employees, plaintiff's official capacity claims against these defendants are construed against the State of Ohio.

The Eleventh Amendment[3] bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court. *See Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). There are some exceptions to the immunity recognized by the Eleventh Amendment. A plaintiff may sue a State for damages in federal court when a State expressly consents to suit, or if the case concerns a federal statute that was passed by Congress pursuant to Section 5 of the Fourteenth Amendment and expresses a clear congressional intent to abrogate sovereign immunity. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55 (1996); *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

With respect to the instant case, the State of Ohio has not waived sovereign immunity in federal court. *See Mixon*, 193 F.3d at 397. In addition, the Supreme Court has held that the federal statute invoked in this case, 42 U.S.C. § 1983, was not intended to abrogate the States' Eleventh Amendment immunity. *See Will*, 491 U.S. at 66-67; *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

---

[3] The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. CONST., AMEND. XI. The Supreme Court has interpreted this Amendment as granting states broad sovereign immunity from federal suits filed by their own citizens as well as citizens of other states. *See Pennshurst State School & Hospital v. Halderman*, 465 U.S. 89, 120-21 (1984).

-6-

Because the Eleventh Amendment bars suits for monetary damages against state employees sued in their official capacities, plaintiff's official capacity claims against defendants Tibbals, Black, Arnold, Allen and Mohr are therefore dismissed for failure to state a claim upon which relief may be granted pursuant to § 1915(e).[4]

Furthermore, the Supreme Court has held that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered "persons" for purposes of a § 1983 claim. *See Will*, 491 U.S. at 71. Consequently, even aside from the issue of sovereign immunity under the Eleventh Amendment, plaintiff fails to state claims for monetary damages against these defendants pursuant to § 1983.

Accordingly, to the extent plaintiff asserts official capacity claims against defendants Tibbals, Black, Arnold, Allen and Mohr, these claims are dismissed pursuant to § 1915(e).

### 2. Individual Capacity Claims

Plaintiff also appears to state claims against defendants Tibbals, Black, Arnold, Allen and Mohr in their individual capacities. For the following reasons, plaintiff's individual capacity claims against defendants Allen and Mohr fail to state claims upon which relief may be granted and are, therefore, *sua sponte* dismissed pursuant to § 1915(e).

A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual

---

[4] Although a claim for prospective injunctive relief may proceed against a state official sued in his/her official capacity, plaintiff herein does not seek injunctive relief in his Complaint. *See Hafer v. Melo*, 502 U.S. 21, 28 (1991); *Will*, 491 U.S. at 71, n. 10.

-7-

capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 2011 WL 180780 at \*\* 1 (6th Cir. Jan. 19, 2011) ("Personal involvement is necessary to establish section 1983 liability"). In other words, individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991). A defendant must, therefore, play more than a passive role in the alleged violation or show mere tacit approval of the actions in question. *Rizzo,* 423 U.S. at 371.

At a minimum, plaintiff in the instant case must show that defendants were personally involved in, encouraged, or condoned the alleged unconstitutional conduct. *Id. See also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). The Complaint does not contain allegations suggesting defendants Mohr or Allen knew plaintiff or in any way personally participated in the alleged constitutional violations at issue. While plaintiff does allege defendants Mohr and Allen were involved in the decision to implement the three-tier management system at MANCI, there are no allegations suggesting either of these defendants were personally involved in the decision to classify plaintiff as a "3B" inmate. Nor is there any indication on the face of the Complaint that defendants Mohr or Allen participated in or authorized the alleged practice at MANCI of improperly classifying "3A" inmates as "3B" inmates due to a lack of space in the housing pods. In light of the above, the Court finds plaintiff has failed to state claims upon which relief may be granted against defendants Mohr and Allen in their individual capacities.

To the extent plaintiff is suing defendants Mohr and Allen based on a theory of supervisory liability, this claim must fail as well. Liability under § 1983 cannot be imposed based on *respondeat superior*. *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). *See also*

*Grinter*, 532 F.3d at 575. "'At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Grinter*, 532 F.3d at 575 (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiff has not alleged any facts suggesting that defendants Mohr or Allen authorized, approved, or knowingly acquiesced in the alleged constitutional violations that form the basis of the Complaint.

Moreover, to the extent plaintiff asserts claims against defendant Allen based on her denial of his grievance regarding the three tier unit management process, this claim is without merit. The Sixth Circuit has repeatedly explained that the "denial of an administrative grievance or the failure to act" by prison officials does not subject supervisors to liability under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Grinter*, 532 F.3d 576; *Alder v. Corr. Med. Servs.*, 2003 WL 22025373 at * 2 (6th Cir. Aug. 27, 2003) (finding that "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension"). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See, e.g. Shehee*, 199 F.3d at 300; *Martin v. Harvey*, 2001 WL 669983 at * 2 (6th Cir. June 7, 2001) (finding that "the denial of the grievance is not the same as the denial of the request to receive medical care"). Thus, where the only specific allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged constitutional violation. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).

Accordingly, and for all the reasons set forth above, plaintiff's individual capacity claims against defendants Mohr and Allen are dismissed pursuant to § 1915(e). The only remaining claims in this action are plaintiff's individual capacity due process, equal protection, and double jeopardy

claims against defendants Tibbals, Black, and Arnold. The Court will address these claims, below.

### B. Due Process

Plaintiff argues defendants violated his due process rights by improperly classifying him as a "3B" inmate. He claims defendants conducted an incomplete privilege review that (1) failed to consider positive information about his conduct, job performance, and education; and (2) improperly considered "closed tickets" for past conduct. (Doc. No. 1 at 4-5). Plaintiff asserts that, had defendants considered the proper information, he would have been classified as a "3A" inmate. (Doc. No. 1 at 4). He claims that, as a result of his allegedly improper "3B" classification, he was denied access to unspecified jobs and programs and confined to his cell "for up to 20 hours a day taking away the chance for rehabilitation." (Doc. No. 1 at 4).

The Due Process Clause of the Fourteenth Amendment provides, in relevant part, that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. CONST. AMEND. XIV. In addition to setting the procedural minimum for deprivations of life, liberty or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the State of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations of constitutionally protected interests which are conducted without due process are subject to suit. *Id*.

Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges or rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The question of what process is due is answered only if the inmate establishes a deprivation of a

constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Due Process Clause, standing alone, provides no liberty interest in freedom from State action taken within the sentence imposed by the court. *Sandin*, 515 U.S. at 480. This includes prison disciplinary actions issued in response to a wide range of misconduct which fall within the expected perimeters of the sentence imposed upon an inmate. *Id.* at 485. An inmate's interest "in avoiding transfer to more adverse conditions of confinement" does not give rise to a constitutionally recognized liberty interest. *Wilkinson*, 545 U.S. at 221. Rather, conditions of confinement implicate a liberty interest only if they impose an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483.

Under the circumstances, the Court finds plaintiff has failed to state a due process claim as a matter of law. Although plaintiff claims generally that his "3B" classification had negative consequences, he does not provide sufficient information as to the nature or duration of these consequences to demonstrate he was subjected to an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Id*. Plaintiff states only that "3B" inmates were removed from unspecified "programs and jobs" and confined to their cells "for up to 20 hours." (Doc. No. 1 at 4). He does not, however, provide any description of these programs and jobs, nor does he explain how the denial of access to these programs and jobs imposed a significant hardship upon him. Further, while he states his "3B" classification resulted in his confinement for "up to" 20 hours, he provides no information regarding how this level of confinement differed from that imposed on "3A"inmates, or how it worked a hardship that was "atypical and significant" in relation to "the ordinary incidents of prison life." *Id.*

Moreover, it is well-established that prisoners do not have a constitutional right to be

-11-

incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Meacham v. Fano*, 427 U.S. 215, 225 (1976).[5] Indeed, the Sixth Circuit has applied this principle in the context of a variety of security classification challenges to find that prisoners had failed to demonstrate due process violations based on a change in security status. *See Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005) (finding increase in security classification to Security Threat Group ("STG") member does not constitute an "atypical and significant hardship in relation to the ordinary incidents of prison life"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 789 (6th Cir. 1995) (rejecting prisoner's allegation that prison officials "violated his procedural due process rights by placing him in administrative segregation without a formal reclassification hearing"); *Cash v. Reno*, 1997 WL 809982 at * 2 (6th Cir. Dec. 23, 1997) (finding prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to a particular security classification); *O'Quinn v. Brown*, 1993 WL 80292 at * 1 (6th Cir. March 22, 1993) (finding prisoner failed to state due process or equal protection claims regarding his security label as "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).

Based on the above, it is clear that plaintiff herein has no constitutional right to any particular placement or security classification. Absent allegations suggesting his "3B" classification imposes an "atypical and significant hardship in relation to the ordinary incidents of

---

[5] In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court did hold that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline" because "[conditions] at [a supermax prison] are more restrictive than any other form of incarceration in Ohio." However, there are no allegations in the instant case suggesting the consequences of Plaintiff's classification as a "3B" rather than "3A" inmate rise to a level comparable to transfer to a "supermax" institution.

prison life," the Court finds plaintiff has failed to state a claim upon which relief may be granted for due process

violations.  However, in light of plaintiff's *pro se* status, the Court will dismiss his due process claim without prejudice to allow him to refile it with greater factual support, should he so choose.

### C. Equal Protection

Plaintiff next argues defendants implemented the three tier management system at MANCI in a discriminatory fashion.  Specifically, he claims that "under the three tier program inmates went through a point system that place[d] them in honor pods, but once the pods were full with 3A inmates, Warden Tibbals allow[ed] his unit managers to re-open close[d] tickets cause there were to[o] many 3A's and not enough 3B's, so inmates such as myself were now class[ed] as 3B's even though [our] points stated we were 3A's." (Doc. No. 1 at 4).  Plaintiff claims this constitutes discrimination because "what you do for the first inmates with the point system should be use[d] on every inmate." (Doc. No. 1 at 4).

The Fourteenth Amendment provides that no State shall "deny to all person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1.  The Equal Protection Clause prevents States from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis.  *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).  *See also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  As the Sixth Circuit has explained, "[t]he threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarborough v. Morgan County Board of*

-13-

*Education*, 470 F.3d 250, 260 (6th Cir. 2006).

In the instant case, plaintiff does not suggest that he is a member of a suspect class or that defendants' alleged discriminatory conduct is based on his membership in a suspect class. Moreover, "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). *See also Coleman v. Governor of the State of Michigan*, 2011 WL 894430 at * 9 (6th Cir. March 16, 2011); *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998). In addition, prisoners do not have a fundamental right to be placed in a specific security classification. *Harbin-Bey*, 420 F.3d at 576.

Because neither a fundamental right nor a suspect class is at issue, rational basis review applies. *Id. See also Johnson*, 624 F.3d at 746. Under rational basis review, government action amounts to a constitutional violation only if it "is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005). This showing is made by either negating every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will. *Id*. at 711. *See also Coleman*, 2011 WL 894430 at * 9 (6th Cir. March 16, 2011).

The Court finds the Complaint fails to sufficiently plead that defendants "intentionally treat[ed] [plaintiff] differently from others similarly situated without any rational basis" for doing so. *See Johnson,* 624 F.3d at 746. It is not entirely clear, but it appears plaintiff is claiming defendants treated him differently because they considered his closed tickets during his privilege review but did not do so with respect to inmates granted "3A" status. He asserts defendants did so only because there were too many "3As" and not enough "3Bs." (Doc. No. 1 at 4). Plaintiff does

not provide any information, however, to suggest that any of the inmates granted "3A" status were "similarly situated" to him. In fact, there are no allegations of any kind regarding these "3A" inmates, much less allegations suggesting they are "similarly situated [to plaintiff] in all relevant respects," as required to satisfy the rational basis standard. *See Umani v. Michigan Dep't of Corrections*, 2011 WL 2882254 at * 7 (6th Cir. July 18, 2011). Moreover, the Sixth Circuit has rejected rational basis equal protection challenges to security classification decisions, noting that "[i]dentifying, reclassifying, and separating prisoners who are members of groups that engage in planning or committing unlawful acts or acts or misconduct 'targets a core threat to the safety of both prison inmates and officials.'" *Harbin-Bey*, 420 F.3d at 576 (quoting *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 1999)).

In light of the above, the Court finds plaintiff's individual capacity equal protection claim is without merit and, therefore, *sua sponte* dismissed pursuant to § 1915(e).

### D. Double Jeopardy

Lastly, plaintiff claims defendants violated the Double Jeopardy Clause by considering his "closed tickets" for past conduct in connection with his privilege review and resultant security classification as a "3B" inmate.

The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V. This clause prohibits "'a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense.'" *United States v. Beaty*, 147 F.3d 522, 524 (6th Cir. 1998) (quoting *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, n. 1 (1994)). However, the Supreme Court has explained that "the "Double Jeopardy

Clause does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98-99 (1997). Rather, "[t]he Clause protects only against the imposition of multiple *criminal* punishments for the same offense . . . ., and then only when such occurs in successive proceedings." *Id*. at 99 (internal citations omitted) (emphasis in original).

The Court finds plaintiff has failed to state a double jeopardy claim. Plaintiff challenges defendants' alleged use of his "closed tickets" in determining his security classification. In order to state a double jeopardy violation, however, plaintiff must allege "multiple *criminal* punishments" for the same offense. *Hudson*, 522 U.S. at 99. Here, plaintiff does not sufficiently allege any criminal punishments relating to the unspecified "closed tickets" at issue. As an initial matter, he does not explain for what offenses or acts of misconduct the "closed tickets" were imposed, nor does he indicate what, if any, previous punishments he received as a result of these tickets. Furthermore, there is no suggestion that defendants' consideration of previously imposed administrative disciplinary sanctions in determining plaintiff's security classification constituted a criminal punishment. To the contrary, the Sixth Circuit has found administrative prison sanctions to be civil in nature, noting that "[t]he Double Jeopardy Clause was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2009). *See also Odom v. Smith*, 2009 WL 125286 at *6 (W.D. Mich. Jan. 16, 2009) (finding prisoner failed to state double jeopardy claim based on prison officials' decision to confiscate his property because the taking of prisoner property is administrative in nature and the Double Jeopardy Clause does not apply to administrative proceedings); *Argue v. Berghuis*, 2006 WL 250696 at *6 (W.D. Mich. Feb. 1, 2006) (finding prisoner failed to state double jeopardy claim because grievance proceedings conducted

by state prison authorities are administrative in nature and, thus, not subject to the Double Jeopardy Clause).

Accordingly, the Court finds plaintiff's individual capacity double jeopardy claim fails to state a claim upon which relief may be granted and is, therefore, *sua sponte* dismissed pursuant to § 1915(e).

## IV. Conclusion

Accordingly, plaintiff's official capacity claims against defendants Tibbals, Black, Arnold, Allen and Mohr are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e). Plaintiff's individual capacity claims against defendants Mohr and Allen are also dismissed with prejudice under § 1915(e). Plaintiff's individual capacity due process claims against defendants Tibbals, Black and Arnold are dismissed without prejudice under §1915(e). Plaintiff's individual capacity equal protection and double jeopardy claims against defendants Tibbals, Black, and Arnold are dismissed with prejudice under §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[6]

IT IS SO ORDERED.

Dated: March 4, 2013  *s/    James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[6]  28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."